■ LAVENTHOL & HORWATH, Respondent, v MOËT-HENNESSY, U.S. CORPORATION, Appellant.—Judgment, Supreme Court, New York County (Edith Miller, J.), entered on or about November 5, 1987, which granted the petition and awarded petitioner $49,567.85 plus interest in this special proceeding, unanimously reversed, on the law, and the petition dismissed, without costs.

Respondent Moët-Hennessy pledged in 1982 to contribute $25,000 each year for four years to the French-American Committee for the Restoration of the Statue of Liberty (FAC). In a writing memorializing the agreement, the pledge was expressly conditioned on the provision that the FAC "continues its work towards the restoration of the Statue." Moët paid the promised $25,000 in 1982 and 1983. In 1984, FAC was investigated for financial irregularities and the United States National Park Service discontinued FAC's authority to raise funds in the United States and assigned its functions, to render architectural services in respect to the restoration of the Statue of Liberty, to a new organization, the Statue of Liberty—Ellis Island Foundation. When FAC discontinued its functions, Moët discontinued making its 1984 and 1985 payments pursuant to its pledge.

Petitioner Laventhol & Horwath performed accounting services for FAC and was not paid. It obtained a judgment against FAC for these unpaid fees in the sum of $49,567.85, which remains unsatisfied. Laventhol instituted the instant special proceeding as a judgment creditor against Moët, seeking to enforce the judgment against Moët, as FAC's debtor, for the unpaid portion of its pledge.

In defense to the petition Moët claimed that it was released from its obligation under the pledge when FAC's activities were discontinued. In reply, petitioner submitted a 1986 affidavit by the vice-president of FAC, submitted in another action, in another context, in which that officer expressed the hope that FAC would resume fundraising in the future and continue to be a viable corporation. The IAS Judge, relying on

the vice-president's affidavit, found FAC to be still operating and *"apparently* restructured and thereafter permitted to resume its work." (Emphasis added.) Predicated upon this conclusion that FAC was still functioning, the IAS court enforced the pledge agreement against Moët.

Pledge agreements calculated to foster eleemosynary enterprises are enforceable. However, liability for fulfillment of such a pledge may be conditioned upon the occurrence of some future event, and if the condition of the pledge does not occur or continue the obligation is not binding. *(See, Allegheny Coll. v National Chatauqua County Bank,* 246 NY 369; *Woodmere Academy v Steinberg,* 41 NY2d 746.) Here, Moët's pledge was expressly conditioned on FAC continuing its work toward the restoration of the Statue of Liberty. When FAC's authority was discontinued by the Park Service in 1984 and its functions toward the restoration of the statue assigned to another entity, there was a failure to fulfill the condition of Moët's pledge and Moët was thereafter no longer obligated under that pledge.

Moreover, even assuming arguendo that FAC was restructured in 1986 and hoped to thereafter resume fundraising activities, Moët's obligation could not be revived. It pledged to contribute money in 1984 and 1985, conditioned on FAC's continued activities in furtherance of restoration of the statue during that specified period only. It may also be noted that the conclusory allegations of the 1986 affidavit expressing vague hopes of restructuring FAC would, in any event, be wholly insufficient even to establish that FAC had resumed its restoration activities after the critical dates covered by the pledge. Concur—Kupferman, J. P., Sullivan, Kassal, Ellerin and Smith, JJ.